### MAGISTRELLI v. CANUSO et al.

District Court, E. D. Pennsylvania.
March 7, 1942.

Amended June 24, 1942.

540

Howard M. Long, of Philadelphia, Pa., for plaintiff.

Herman Steerman, of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This matter arises in admiralty wherein two actions by Victor Magistrelli, trading as Wharton Construction Company, were brought against Francis A. Canuso, Sr., and Francis A. Canuso, Jr., co-partners, trading as Francis A. Canuso & Son. The one action No. 11 of 1941 is brought by the libellant for damages by way of rental and towing charges as well as for the loss of a scow allegedly due to the negligence in operation of the same by the respondents, and the second action to No. 9 of 1941 is by the same libellant against the same respondents covering rental and towing allegedly in the aggregate of Three Hundred Seventy-Five Dollars ($375) due the libellant for the use of the scow Winchester while under rental to the respondents. By agreement of counsel both actions were consolidated into one for trial and as to No. 9 of 1941 and No. 11 of 1941, it was further stipulated by counsel that the libellant in both suits be changed from Victor Magistrelli, trading as Wharton Construction Company, to Joseph Magistrelli, trading as Wharton Construction Company; both actions were consolidated for trial, but in oral argument and in the briefs counsel has treated them separately, and accordingly they will be disposed of as separate actions.

With respect to No. 11 of 1941, covering rental, towing charges and the loss of the Scow Victor No. 1, I find as a fact, the following:

(1) That on August 2, 1939, libellant who was the owner thereof entered into a written contract or charter whereby he agreed to furnish to the respondents the said Scow for a period of one hundred twenty days from the date of the said contract at a total rental of Nine Hundred Dollars ($900) payable in quarterly installments of Two Hundred Twenty-Five Dollars ($225) each during the charter period;

(2) That the respondents were to keep a six inch thick planking on the deck of the Scow;

(3) That the sum of Thirty Dollars ($30) was to be paid by the respondents for towing charges to bring the same from Wilmington up the Raccoon Creek, where it was to be operated by the respondents;

(4) That it was further agreed that the Scow was to be returned to the libellant at Philadelphia in the same condition as when received by the respondents, ordinary wear and tear excepted;

(5) That the respondents used the said Scow in Raccoon Creek near Bridgeport, New Jersey, as part of their equipment in the construction of a bridge across Raccoon Creek under a contract with the State of New Jersey up to and including December 13, 1940;

(6) That at the expiration of the original charter date it was agreed between the parties that the Scow's captain, employed by the libellant, should be removed from the Scow; that the libellant should cease insuring the same and that the respondents were to take full custody, possession and control of it, and the charter hire reduced to One Hundred Twenty-Five Dollars ($125) per month;

(7) That the said Scow was then used under these arrangements until December 13, 1940;

(8) That the respondents paid the libellant the charter hire due up to and including November 5, 1940;

(9) That the said Scow Victor No. 1 at the time of the delivery by the libellant to the respondents under the charter agreement, was a seaworthy vessel;

(10) That on December 13, 1940, respondents so negligently and carelessly operated, managed and navigated the said Scow Victor No. 1 as to cause her to become stranded on certain obstructions in the Raccoon Creek, consisting of piling and timber of a bridge, which had been previously constructed across said creek and in place of which a new bridge was being constructed.

A careful reading of the testimony convinces me that at the time the Scow Victor No. 1 was turned over to the respondents by the libellant, the vessel was seaworthy in every respect and I arrive at this conclusion without giving any consideration whatsoever to the testimony of Nelson, who was alleged to be the superintendent on behalf of the respondents, but rather largely on the testimony of Thomas J. August, who has been following the sea for a period of thirty years and made a survey of the boat in the summer of 1939, and again had an opportunity to observe it while in the employ of the respondents during the summer of 1940 as well as other competent testimony by individuals familiar with seacraft, that previous to the delivery to the respondents new planks had been put on the boat and the same was thoroughly gone over and caulked, as well as the fact that it had been engaged in carrying heavy stones on the Smyrna River; further the established fact that the respondents had the boat and used it continually for a period of seventeen and one-half months; in addition the fact that there was no complaint of any unseaworthiness by the respondents to the libellant.

The contract of hire or the terms of the charter, coupled with the oral agreement that complete custody and command of the boat was in the respondents, makes the contract of hire a demise for as the court held in United States v. Shea, 152 U.S. 178, at page 189, 14 S.Ct. 519, at page 522, 38 L.Ed. 403: "No technical words are necessary to create a demise. It is enough that the language used shows an intent to transfer the possession, command, and control".

Here there can be no doubt at the time of the sinking of the vessel that the possession, command and control thereof was in the respondents. For upon the leaving by the Captain who had been in the libellant's employ, there was no one in connection with the libellant who had anything to do with the Scow, and, accordingly, since the charter was a demise the respondents were the owners of the boat pro hace vice. The Johnson Lighterage Co. No. 24, D.C., 240 F. 435.

The burden of proof to establish negligence is of course on the libellant, but the showing by the libellant of the contract to hire and the failure of the respondents to fulfill the conditions of the charter, that the Victor No. 1 be returned in the same condition as when it was received, less reasonable wear and tear, creates a case of prima facie negligence on the part of the respondents. Tomkins Cove Stone Co. v. Bleakley Transportation Co., Inc., 3 Cir., 40 F.2d 249, 251.

For as has been indicated while the burden of proving negligence is on the owner, the libellant after he has made out a prima facie case by the showing of the seaworthiness of the vessel, the charter or agreement to hire and the failure to return the same in the condition it was delivered, barring ordinary wear and tear, casts the burden of going forward, as it has been often phrased on the respondents, which is a requirement that he sufficiently explain this to meet the prima facie case so made out by the libellant. Have, therefore the respondents by competent testimony offered a sufficient explanation which would match the prima facie case of negligence, established by the libellant? If he has not so done, a situation is created, as Judge Woolley so aptly puts it in the Tomkins case, supra, "as though he stood mute facing the presumption".

Without going into any extensive review of the testimony covering the sinking of the barge on the 13th day of December, 1940, while being used by the respondents, I feel that the operation and management of the barge by them was careless and negligent and not due to any unseaworthiness of the Scow itself. I think the testimony firmly shows that an extensive strain was put on the Scow in the pulling of certain pilings and that the piling being pulled at the time was one which by reason of its depth caused too great a strain to be exerted by the crane on the Scow, which resulted in its submersion. The testimony further shows that great difficulty was encountered in the removal of the piling, it having to be worked from side to side and that a great deal of force was required to dislodge it.

I further feel that the evidence on behalf of the respondents is unconvincing and not persuasive and fails to meet the burden of going forward which is required of it under the law. In other words, there is nothing in the respondents' testimony which can be considered an explanation in exculpation of the prima facie case established by the libellant, Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417, as the whole of the respondents' case concerns itself with the alleged unseaworthiness of the vessel, which as I have indicated is not borne out by the testimony.

An additional defense of accord and satisfaction is also asserted. The facts concerning the same upon which respondents rely is an alleged agreement entered into between the libellant and respondents on December 19, 1940, which was substantially as follows, that the rental due to the libellant on the Victor No. 1 and Winchester (suit for which is the subject of the other action) and all towing charges in connection with both as well as damages for the sinking of Scow Victor No. 1 would be settled by the said libellant for the sum of One Thousand Dollars ($1,000), and that on the next morning, which would be the 20th, he would come back to the respondents and execute a letter to the government abandoning the Scow Victor No. 1 as a menace to navigation. The next morning he went to the respondents' office and a letter was dictated to the Army Engineers, abandoning the boat, which he claims he never executed, but put it in his pocket, and certainly did not deliver. At this time libellant was offered Five Hundred Dollars ($500), as part payment which he refused to take and according to one of the respondents own statement, F. A. Canuso, Jr., Magistrelli said he would take all of the money when they were through. This testimony with respect to an alleged accord and satisfaction was permitted in evidence, though neither in the Answer nor Cross-Libel is there a forthright averment that the matter was accepted in satisfaction of the libellant's claim, which is required of good pleading. First National Bank of Arkansas City v. Leech, 8 Cir., 94 F. 310, 311. However, since it might be possible to draw this conclusion from the facts pleaded, the matter in an accord and satisfaction was gone into fully. No little consideration has been given to this testimony and I am thoroughly convinced that there was neither an accord and satisfaction, nor an executory accord and satisfaction. In considering an executory accord and satisfaction or accord and satisfactions as such, Chitty on Contracts, 11th Am.Ed., 1124, sets forth the following: "And, upon the whole, the true distinction would seem to be, between cases in which the plaintiff has agreed to accept the promise of the defendant in satisfaction and those in which he has agreed to accept the performance of such a promise in satisfaction, the rule being that in the latter case, there would be no satisfaction without performance; whilst, in the former, if the promise be not performed, the plaintiff's only remedy is by action for the breach thereof, and he has no right to recur to his original demand".

Accordingly, in order to find an executory accord and satisfaction here, it must be found—since there was no satisfaction, payment of the sum of One Thousand Dollars ($1,000)—that the libellant accepted the respondents' promise as satisfaction and I can nowhere, from a careful reading of the testimony, find that the libellant agreed to take the promise of the respondents to take One Thousand Dollars ($1,000) in lieu of his cause of action generally; and further the fact that at the time of the alleged meeting of the minds with respect to an executory accord and satisfaction, there was still an act in futuro, to wit: the execution and delivery of a letter to the United States Army Engineers advising them of the arrangements of the libellant for the abandonment of the Scow. Therefore since the respondents have set this up as a part of the so-called executory accord and satisfaction and since no proof was offered by respondents that said letter was ever executed and delivered by the libellant, all the elements required to prove an alleged executory accord and satisfaction were not present. Some light was shed on this by the forwarding to the Court, after the trial, of a letter purporting to be the one written to the Army Engineers, unexecuted by the libellant.

Further it is difficult to see, even if it could be assumed that the libellant accepted the promise itself and not the performance thereof in satisfaction of the original cause of action, what the consideration was therefor. At most the testimony here offered makes out an unexecuted agreement, since satisfaction was not had by reason of the fact that only Five Hundred Dollars ($500) was offered and there was not even a tender made by respondents with respect to the balance. Schwartzfager v. Pittsburgh, H. B. & N. C. R. Co., 238 Pa. 158, at page 165, 85 A. 1115, Ann.Cas.1914C, 149.

After carefully considering the testimony with respect to damages to which the libellant is entitled to in this action, the Court makes an award of Thirteen Hundred Dollars ($1,300).

With respect to the action here designated as No. 9 of 1941, between libellant and respondents, the Court finds that there was a contract of hire between libellant and respondents for the use of the Scow Winchester for a period of thirteen days (13) at a rate of Twelve Dollars ($12), which amounts to One Hundred Fifty-Six Dollars ($156), and that a towage fee was incurred with respect to the same amounting to Seventy-Five Dollars ($75). Therefore there is an award to the libellant in this action of the sum of Two Hundred Thirty-One Dollars ($231).

### Amended Opinion

Counsel for petitioner has brought to the attention of the Court that with respect to the action designated above as No. 9 of 1941 in the Court's opinion dated March 7, 1942, by inadvertence no reference was made to the contract of hire, covering the charter for the barge "Winchester" from January 1, 1941 to January 8, 1941, a period of seven days at Twelve Dollars ($12.00) per day, amounting to Eighty-four Dollars ($84.00), nor was there any reference to the towage charge of Sixty Dollars ($60.00) incident thereto. Counsel's reference thereto is correct and the amount of the award with respect to Action No. 9 is increased by the further allowance of One Hundred Forty-four Dollars ($144.00), representing the items aforesaid.

In reference to the award made with respect to the action designated as No. 11 of 1941, counsel's request that additional allowance be awarded is denied as all of the items brought to the attention of the Court were taken into consideration when the award for said Action No. 11 was allowed.